McE-eotey, J.,
delivered the opinion of the court.
This suit was commenced before a justice of the peace by the defendant in error, to recover the amount of certain bank notes issued by the plaintiff in error, which, upon demand being made before suit, the bank refused to pay. The bank notes bear date at different periods in the year 1840and this suit was commenced 7th of September, 1854. Judgment was rendered for the plaintiff in the court below, and the bank appealed in error to this court.
The proof shows, that in May, 1847, the bank suspended payment of its notes, and ceased to do business ; and has remained in a state of suspension ever since; though it is admitted that the corporation still exists.
The only defence set up or relied upon, in bar of the recovery, is the statute of limitations. The jury were instructed, on the trial, that this defence was not 'available for the bank; and this instruction is assigned for error.
Bank notes differ essentially from promissory notes and other negotiable securities for money. They are not, properly speaking, evidences of debt or security for money; but are treated as money, in the ordinary *484 course and transaction of business, by tbe general consent of tbe community. They are transferable by delivery, and are issued and put in circulation with tbe avowed intention, that they shall pass from band to hand and circulate as money: and with tbe further intention, that they shall continue in circulation, as money, during the continuance of tbe banking corporation; or, at least, that they shall be returned as seldom as possible; and that, when returned, they shall be again re-issued, and thus remain in circulation indefinitely. In this view, the liability remains, and as a continuing promise to pay, until actual refusal of payment, upon demand made at the counter of the bank. Nothing short of refusal can, consistently with principle or the analogies of law, furnish a sufficient ground for the statute of limitation to attach, or begin to operate: until then the bank was in no default, nor had the holder of the notes any cause of action.
The notes exhibited in this record, are payable on demand, without limitation of time. It would be absurd to hold, that because payable on demand, it must be taken that they were actually issued and put in circulation at their respective dates; for, as said in the case of Greer vs. Perkins, 5 Humph., 592, the date of a bank note affords no presumption that it was put in circulation at that time. It may have been filled up and dated long before it was first issued; and after issuance, it may have been returned and re-issued repeatedly, and at distant intervals. But, be this as it may, it is sufficient to repel the application of the statute of limitations, that the promise to pay, upon the face of the *485 note, is to be regarded as a continuing promise to pay, upon demand being made, until actual refusal.
It is argued, however, that admitting the general rule to be as above stated, the case under consideration forms an exception, and requires the application of a different rule: The argument is, that from the time of the suspension of payment in May, 1847, the statute ought to be held to apply, and to run against all the notes of the bank then out-standing, not presented within six years from that date. This proposition is wholly v untenable. It has no foundation in reason, in law, or in moral honesty; it is directly at variance with the principle just announced, that the bank is precluded from' setting up the statute against its outstanding notes, until actual refusal to pay. The fact of suspension is no sufficient evidence, either of actual inability or unwillingness on the part of the bank to discharge its just liabilities ; certainly it can in no sense be regarded as equivalent to a refusal to do so. Generally speaking, it is understood as a mere temporary expedient, to avoid the consequences of some sudden, unforeseen emergency. But however this may be, how can the mere fact of suspension, whatever may be the character or cause of it, form a ground for the application of the statute of limitations in favor of the bank, as against the holders of its notes? No such conclusion can be predicated of the omission of the bank on the one hand, to call in and discharge its outstanding notes; or of the delay of the note holders on the other, to demand payment. The notes still remain in circulation, notwithstanding the suspension, it may be, at a depreciated value: or they remain in the hands of innocent holders, as the repre *486 sentatives of money; and they so remain subject to the continuing liability and promise of the bant for their ultimate payment. It is clear therefore, that until demand and refusal of payment, the holder of the notes has no ground of complaint, or cause of action against the bank. It follows, from this view, that the application of ’ the statute of limitations, in such cases, is not varied by the fact that the bank may have remained under suspension for more than six years before payment of the notes was demanded.
It would be alike dangerous and unjust to place it in the power of the bank to malee a case, at its own pleasure, for the operation of the statute; and by this method, appropriate the property and effects of the bank to the individual benefit of the owners of the stock, in defiance of the just claims of creditors. Such a doctrine deserves no sanction.
The judgment is proper, and it will be affirmed»